USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ________
DATE FILED: 4/28/09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

HOWARD JACKSON, KENNETH UDEMEZUE, ANDRE JOHNSON, BRANDON BONNER, LONNIE PEARSON, KELENA TATE, ABC REAL ESTATE SERVICES, INC., and SANTOS REALTY, INC.

Plaintiffs,

-against-

AMERICAN PLAZA CORP., CITY ROOMS, INC., CORONADO SIGUE MULTI-SERVICE INC., EASY ROOM RENTALS, ERR NYC LLC, FLASH RENTALS, J.A.H. ROOMS FOR RENT, MYNEWROOMMATE, INC., HANS GABRIEL VOLTAIRE a/k/a LOUIS SOLIS, NEW HABITAT SOLUTIONS, NYC ROOMS FOR RENT, INC., NYGORENTALS.COM, SQUARE FOUR REALTY, RENTASY RENTALS, INC., and SOOL REALTY CORP.,

Defendants.

-----------------------------------------------------------------x

08 Civ. 8980 (PKC)

MEMORANDUM
AND ORDER

P. KEVIN CASTEL, District Judge:

Plaintiffs ABC Real Estate Services, Inc. ("ABC") and Santos Realty, Inc. ("Santos") move for a preliminary injunction barring defendant Rentasy Rentals, Inc. ("Rentasy") from violating the Terms of Use ("TOU") to which Rentasy agreed when it posted rental advertisements on the website craigslist.org ("Craigslist"). Plaintiffs, competitors of Rentasy, claim that Rentasy is violating the TOU and irreparably harming plaintiffs by engaging in "spamming" or "multiple posting," posting repetitive advertisements for the same rental properties on Craigslist within a short time frame.[1] Plaintiffs contend that they are third-party

---

[1] The complaint also alleges claims under Title VIII of the Civil Rights Act of 1968, as amended, 42 U.S.C. §§ 3601 et seq. (the "Fair Housing Act"); New York Real Property Law, Art. 12-C, §§ 444-a et seq.; New York Executive Law § 296(5)(a) (the "New York Human Rights Law"); New York City Administrative Code § 8-107 (the "New York City Human Rights Law"); and New York General Business Law § 349 against multiple defendants, including

beneficiaries of the TOU agreement between Craigslist and Rentasy, and therefore have standing to enforce the TOU against Rentasy. For the reasons explained below, the motion for a preliminary injunction is denied.

BACKGROUND

A. The Parties

ABC is "engaged in the business of room rental information vending" and its broker of record is licensed by the New York State Department of State. (Compl. ¶ 4.) Santos is likewise "engaged in the business of room rental information vending" and has a broker of record licensed by the New York State Department of State. (Id. ¶ 5.) Rentasy "acts as an apartment sharing agent or apartment information vendor in New York City, although not licensed to act as such by the New York State Department of State." (O'Murchadha Decl. ¶ 4.)

Craigslist, a non-party, is an internet service which allows third-party sellers and buyers to post and browse advertisements for various goods and services. (Id. ¶ 3.) ABC and Santos use Craigslist to advertise rental properties. (Compl. ¶ 171; O'Murchadha Decl. ¶ 5.) Rentasy, a competitor of ABC and Santos, also advertises rental properties on Craigslist. (Compl. ¶ 170; O'Murchadha Decl. ¶ 4.)

B. The Craigslist Terms of Use

To post an advertisement on Craigslist, a user must first consent to Craigslist's TOU by clicking "I agree." (Compl. ¶ 26; O'Murchadha Decl. ¶ 6.) The TOU provide that

---

Rentasy. (See Compl. ¶ 1.) However, plaintiffs confine their motion for a preliminary injunction to Rentasy's alleged breach of the Craigslist TOU. (See id. ¶¶ 1, 208; see also Doc. #23 (letter from plaintiffs' counsel explaining that plaintiffs "seek only an order prohibiting Rentasy from posting advertisements on the New York City housing list of Craigslist.org that constitute additional postings made within twenty-four (24) hours of another of its posts").)

"[b]y using the [Craigslist] Service in any way, you are agreeing to comply with the TOU." (O'Murchadha Decl. ex. D ¶ 1.) Among other prohibitions, the TOU provide that "you agree not to . . . post non-local or otherwise irrelevant Content, repeatedly post the same or similar Content or otherwise impose an unreasonable or disproportionately large load on our infrastructure." (Id. ex. D ¶ 7(v).)

The TOU also provide that "when using particular craigslist services, you agree to abide by any applicable posted guidelines for all craigslist services." (Id. ex. D ¶ 1.) According to plaintiffs, such guidelines include the answers to the "Frequently Asked Questions" ("FAQ") listed on the Craigslist website. (Id. ¶ 9.) In response to the question, "How often can I post?" the FAQ states: "You may post to one category and in one city, no more often than about every 48 hours. If you are submitting a post that is similar to another currently active post of yours on the site, you will get a blocked message. Removing the active post will allow you to post the new ad, unless the active post is less than 48 hours old." (Id. ex. E at 3.)

The TOU provide that "[t]he TOU constitute the entire agreement between you and craigslist . . . ." (Id. ex. D ¶ 18.) They also provide that "[s]hould you object to any term or condition of the TOU, any guidelines, or any subsequent modifications thereto or become dissatisfied with craigslist in any way, your only recourse is to immediately discontinue use of craigslist." (Id. ex. D ¶ 1.) The TOU further state that "craigslist has the right, but is not obligated, to strictly enforce the TOU through self-help, community moderation, active investigation, litigation and prosecution." (Id.) Finally, the TOU request that users "report any violations of the TOU[] by flagging the posting(s) for review[] or by emailing to: abuse@craigslist.org." (Id. ex. D ¶ 19.)

According to plaintiffs, Rentasy violates the Craigslist TOU by "posting the same advertisements over and over again." (Id. ¶ 11.) Plaintiffs have submitted evidence substantiating this claim. (See id. ex. F, G, H, I, J, K; O'Murchadha Supp. Decl. ex. N, O, P.) Indeed, Rentasy admitted at the preliminary injunction hearing that it has breached the TOU's prohibition on repetitive posting. Plaintiffs complain that this "has the effect of overwhelming competitors with the sheer volume of postings and increasing many times the likelihood that a casual consumer will select a link posted by Rentasy rather than one posted by" ABC or Santos. (O'Murchadha Decl. ¶ 11.)

C. Procedural History

On March 23, 2009, plaintiffs presented a proposed Order to Show Cause seeking a preliminary injunction and containing a request for a temporary restraining order barring Rentasy from engaging in repetitive, duplicative posting on Craigslist. The same day, the Court set a schedule on the preliminary injunction motion but denied plaintiffs' request for a temporary restraining order. In a Stipulation and Order signed by the Court on April 9, 2009, the parties agreed that pending a preliminary injunction hearing, Rentasy would "refrain from posting, or suffering to be posted on its behalf, advertisements on the New York City housing list of Craigslist.org that constitute additional postings made within twenty-four (24) hours of another of its posts."[2] (Doc. #25 ¶ 4.) Rule 65(a), Fed. R. Civ. P., requires that a preliminary injunction motion be on notice to the adverse party. The Court held a hearing on plaintiffs' motion on April 24, 2009. The parties were afforded the opportunity to call live witnesses, although neither side did so.

[2] In a facsimile transmitted to the Court at 4:19 p.m. on April 27, 2009, plaintiffs provided evidence that Rentasy has made repetitive postings in violation of this Order. The Court will address this issue separately.

DISCUSSION

I. Governing Law

A. Preliminary Injunction

A preliminary injunction may be granted if the movant shows (a) irreparable harm and (b) either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. Gold v. Feinberg, 101 F.3d 796, 800 (2d Cir. 1996). Irreparable harm is an "injury for which a monetary award cannot be adequate compensation." Jayaraj v. Scappini, 66 F.3d 36, 39 (2d Cir. 1995) (quotation omitted). A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (quotation omitted) (emphasis in original).

B. Third-Party Beneficiaries Under California Law

The TOU contain a choice-of-law clause providing that "[t]he TOU and the relationship between you and craigslist shall be governed by the laws of the State of California without regard to its conflict of law provisions." (O'Murchadha Decl. ex. D ¶ 18.) It is undisputed that California contacts law applies to the TOU. See Motorola Credit Corp. v. Uzan, 388 F.3d 39, 51 (2d Cir. 2004) ("[W]here the parties have chosen the governing body of law, honoring their choice is necessary to ensure uniform interpretation and enforcement of that agreement and to avoid forum shopping."); Finucane v. Interior Constr. Corp., 264 A.D.2d 618, 620 (1st Dep't 1999) (holding that New York enforces choice-of-law provisions provided that "(a) the law of the State selected has a reasonable relation[ship] to the agreement . . . and (b) the

law chosen does not violate a fundamental public policy of New York") (citations and quotation omitted); see also Corporacion Venezolana de Fomento v. Vintero Sales Corp., 629 F.2d 786, 793 (2d Cir. 1980) (in federal question case, applying New York law where contract contained a New York choice of law clause). Because California law governs the TOU, it also governs the question of whether the TOU create rights enforceable by third-party beneficiaries. See Prescient Acquisition Group, Inc. v. MJ Pub. Trust, 05 Civ. 6298(PKC), 2006 WL 2136293, at *9 (S.D.N.Y. July 31, 2006).[3]

Under California law, "[a] contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." Cal. Civ. Code § 1559. "Traditional third party beneficiary principles do not require that the person to be benefited . . . be named in the contract. A third party may qualify as a beneficiary under a contract where the contracting parties must have intended to benefit that individual and such intent appears on the terms of the agreement. It is well settled, however, that Civil Code section 1559 excludes enforcement of a contract by persons who are only incidentally or remotely benefited . . . by the agreement." TXU Energy Retail Co. LP v. Agri-Cel, Inc., No. C-01-20289(RMW), 2006 WL 2385256, at *6 (N.D. Cal. Aug. 16, 2006) (quoting Harper v. Wausau Ins. Co., 56 Cal. App. 4th 1079, 1087 (1997)). "'The circumstance that a literal contract interpretation would result in a benefit to the third party is not enough to entitle that party to demand enforcement. The contracting parties must have intended to confer a benefit on the third party.'" Hilderman v. Enea TekSci, Inc., 551 F.Supp.2d 1183, 1195 (S.D. Cal. 2008) (quoting Neverkovec v. Fredericks, 74 Cal. App. 4th 337, 348 (1999)). "To determine whether a third party is an intended beneficiary or merely an incidental beneficiary to the contract involves

[3] The Court notes that the TOU state that "[y]ou and craigslist agree to submit to the personal and exclusive jurisdiction of the courts located within the county of San Francisco, California." (O'Murchadha Decl. ex. D ¶ 18.) However, neither party has invoked rights under this forum selection clause, and the Court need not address it.

'construction of the parties' intent, gleaned from reading the contract as a whole in light of the circumstances under which it was entered.'" Id. (quoting Jones v. Aetna Cas. & Surety Co., 26 Cal. App. 4th 1717, 1725 (1994)).

II. Application

As explained below, plaintiffs have failed to satisfy either prong necessary to obtain a preliminary injunction against Rentasy.

A. Likelihood of Success or Balance of Hardships

First, plaintiffs must demonstrate either a likelihood of success on the merits, or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in their favor. Gold, 101 F.3d at 800.

1. Likelihood of Success on the Merits

It is undisputed that plaintiffs were not parties to the TOU agreement between Rentasy and Craigslist. Thus, to succeed on the merits of their breach of contract action against Rentasy, plaintiffs must first establish that they are third-party beneficiaries of the TOU. A "terms of use" or "terms of service" contract is often entered into by clicking an "I agree" button on a webpage. There is nothing unique about such a contract -- a so-called "clickwrap" agreement -- that would foreclose the possibility of it creating rights enforceable by third-party beneficiaries. See Inter-Mark USA, Inc. v. Intuit, Inc., C-07-04178(JCS), 2008 WL 552482, at *8 (N.D. Cal. Feb. 27, 2008) (noting that "'clickwrap' agreement[s] [are] enforceable" and that courts evaluate them by "apply[ing] 'traditional principles of contract law'") (quoting Feldman

v. Google, Inc., 513 F.Supp.2d 229, 236 (E.D. Pa. 2007). Rather, as with any contract, the Court determines whether plaintiffs are intended beneficiaries or merely incidental beneficiaries by evaluating the intent of the contracting parties, "gleaned from reading the contract as a whole in light of the circumstances under which it was entered." Hilderman, 551 F.Supp.2d at 1195 (quotation omitted).

The text of the TOU does not give any indication that Craigslist, the promisee, or Rentasy, the promisor, intended Rentasy's covenants to benefit plaintiffs. See Cal. Civ. Code § 1559 (third party must show that contract was "made expressly for the benefit of" that party) (emphasis added); TXU Energy Retail Co. LP, 2006 WL 2385256, at *6 ("the contracting parties must have intended to benefit [the third party] and such intent [must] appear[] on the terms of the agreement") (quotation omitted). First, the TOU provide that "[t]he TOU constitute the entire agreement between you and craigslist . . . ." (O'Murchadha Decl. ex. D ¶ 18.) Phrased as it is, this provision contemplates that the TOU are creating rights and duties only between the two contracting parties.

Second, the TOU provide that "[s]hould you object to any term or condition of the TOU, any guidelines, or any subsequent modifications thereto or become dissatisfied with craigslist in any way, your only recourse is to immediately discontinue use of craigslist." (Id. ex. D ¶ 1.) By stating that a user's "only recourse" upon becoming "dissatisfied with craigslist in any way" is to cease using craigslist, the TOU seem to limit the remedies available to a discontented user and bar that user (but not necessarily Craigslist) from bringing a civil action. This reading is further reinforced by the provision stating that "craigslist has the right, but is not obligated, to strictly enforce the TOU through self-help, community moderation, active

investigation, litigation and prosecution." (Id.) By granting to Craigslist the right to enforce the TOU, this provision implicitly denies that right to third parties.

Third, the TOU request that users "report any violations of the TOU[] by flagging the posting(s) for review[] or by emailing . . . abuse@craigslist.org." (Id. ex. D ¶ 19.) Thus, Craigslist has established an internal grievance mechanism to allow users to report violations of the TOU by other users. This strongly suggests that Craigslist did not also intend to endow users with the right to pursue grievances against TOU violators through litigation. See Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 399-400 (2d Cir. 2004) (holding, under California law, that party was not third-party beneficiary of contract where "[promisee] deliberately included in the same contract that persons aggrieved by [promisor's] violation of such a term should seek satisfaction within the framework of [promisee's] grievance policy, and should not be heard in courts of law to plead entitlement to enforce [promisor's] promise to [promisee]").

Fourth, the specific provision of the TOU that plaintiffs claim Rentasy has violated does not appear to exist for plaintiffs' benefit. The TOU state that "you agree not to . . . repeatedly post the same or similar Content or otherwise impose an unreasonable or disproportionately large load on our infrastructure." (O'Murchadha Decl. ex. D ¶ 7(v).) The phrase "or otherwise impose an unreasonable or disproportionately large load on our infrastructure" suggests that the prohibition against "repeatedly post[ing] the same or similar Content" exists solely for the benefit of Craigslist itself. The clause, read as a whole, indicates that Craigslist's principal concern with repetitive posting was that it burdens the Craigslist infrastructure. Thus, any benefit received by plaintiffs is incidental.

Plaintiffs also claim that the TOU, by virtue of incorporating "any applicable posted guidelines," include the online FAQ, and thus prohibit users from posting "more often

than about every 48 hours." (Id. ex. D ¶ 1; ex. E at 3.) Assuming arguendo that the FAQ is indeed part of the TOU, this provision still does not contemplate the creation of enforceable rights in other Craigslist users. The same FAQ answer goes on to state that "[i]f you are submitting a post that is similar to another currently active post of yours on the site, you will get a blocked message. Removing the active post will allow you to post the new ad, unless the active post is less than 48 hours old." (Id. ex. E at 3.) Thus, as discussed above, Craigslist has established an internal mechanism for policing compliance with its policies.

Finally, plaintiffs have submitted extrinsic evidence of "Craigslist's own public statements" (Pl. Mem. at 9) that purportedly "show[s] that Craigslist presents itself as a public service" (Pl. Rep. Mem. at 3). (See O'Murchadha Decl. ex. A, B.) In particular, plaintiffs submit that "Craigslist's founder, Craig Newmark, says 'Those who post on Craigslist must abide by a strict set of rules that govern the online community, which exist to protect buyers and sellers alike.'" (O'Murchadha Decl. ¶ 3 (quoting http://www.business.com/guides/marketing-your-business-on-craigslist-1382).) Yet, a review of this webpage (attached as Exhibit B to Mr. O'Murchadha's declaration) reveals that this statement was not made by anyone affiliated with Craigslist. Rather, this statement was the opinion of the author of an internet article, a "Guide to Marketing Your Business on Craigslist." (Id. ex. B.) Plaintiffs also point to a Business Week interview in which the C.E.O. of Craigslist stated that Craigslist is "a public service first. . . . Our primary mindset is philanthropic." (Id. ex. A at 2.) None of plaintiffs' submissions of extrinsic evidence -- even if they all had been statements by senior officers of Craigslist -- indicate that Craigslist intended its TOU agreements to vest Craigslist users with legally enforceable rights against other users who allegedly breach the TOU. Nor is the language of the TOU "readily

susceptible" to such an interpretation. Consol. World Invs., Inc. v. Lido Preferred, Ltd., 9 Cal. App. 4th 373, 379 (1992).

Thus, plaintiffs have failed to show that they are likely to prevail in demonstrating that they are third-party beneficiaries of the TOU agreement between Rentasy and Craigslist. Accordingly, plaintiffs have failed to establish a likelihood of success on the merits of their breach of contract action against Rentasy.

2. Balance of Hardships

Although plaintiffs have failed to establish a likelihood of success on the merits, they may be entitled to a preliminary injunction if they can show sufficiently serious questions going to the merits to make them a fair ground for litigation, and a balance of hardships tipping decidedly in their favor. Gold, 101 F.3d at 800. For the reasons just discussed, plaintiffs have not shown sufficiently serious questions going to the merits of their claim to be third-party beneficiaries of the TOU. Moreover, plaintiffs have not submitted evidence showing that, prior to bringing this action, they complained to Craigslist of Rentasy's offending conduct through Craigslist's internal grievance mechanism established in the TOU.[4] As a party seeking equitable relief from the Court, they have not demonstrated that they have been vigilant in pursuing the contractual remedy that is indisputably available to them. Thus, plaintiffs also have failed to show that the balance of hardships tips decidedly in their favor.

[4] However, plaintiffs' counsel has represented that after filing the complaint, counsel emailed Craigslist requesting that it file an affidavit to support plaintiffs in this litigation. (See O'Murchadha Supp. Decl. ex. L.) No affidavit from Craigslist has been filed with the Court.

B. Irreparable Harm

Even if plaintiffs could establish a likelihood of success on the merits, they are not entitled to a preliminary injunction because they have not established that they are facing likely irreparable harm. "[A] showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." Reuters Ltd. v. United Press Int'l, Inc., 903 F.2d 904, 907 (2d Cir. 1990) (quotation omitted). The plaintiffs must establish "that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent." Grand River Enterprise Six Nations, Ltd. v. Pryor, 481 F.3d 60, 66 (2d Cir. 2007) (quotation omitted). Furthermore, "[i]rreparable harm is injury for which a monetary award cannot be adequate compensation." Int'l Dairy Foods Assoc. v. Amestoy, 92 F.3d 67, 71 (2d Cir. 1996) (quotation omitted). "If an adequate remedy at law exists, no preliminary injunction may issue." Nature's Enterprises, Inc. v. Pearson, 08 Civ. 8549(JGK), 2008 WL 4700547, at *2 (S.D.N.Y. Oct. 24, 2008) (citing Register.com, Inc., 356 F.3d at 404).

Plaintiffs have not shown that absent a preliminary injunction, they will suffer an "actual and imminent" injury. Grand River Enterprise, 481 F.3d at 66. Even if it is true that Rentasy is violating the Craigslist TOU, plaintiffs can do no more than speculate that Rentasy's repetitive posting will result in a loss of profits to plaintiffs. Such an outcome is far too remote to establish probable irreparable harm. Furthermore, plaintiffs are free to advertise their rental services on countless websites and publications other than Craigslist. And finally, plaintiffs have not shown that a monetary award will be inadequate to compensate them if they ultimately prevail on their breach of contract claim against Rentasy. In fact, the TOU expressly provide for specific liquidated damages to be paid in the event of a breach of the TOU. (See O'Murchadha Decl. ex. D ¶ 19.) For instance, the TOU state that "[i]f you post Content in violation of the

TOU . . . you agree to pay craigslist one hundred dollars ($100) for each Item of Content posted." (Id.) Thus, plaintiffs have failed to establish that in the absence of a preliminary injunction, they face probable irreparable harm.

CONCLUSION

For the foregoing reasons, plaintiffs' motion for a preliminary injunction is denied.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
April 28, 2009